**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

ROSA ANGELA GONZALEZ-SANTOS, *et
al.*,

    **Plaintiffs,**

            **v.**

ANGEL G. TORRES-MALDONADO, *et
al.*,

    **Defendants.**

**CIVIL NO.** 09-1850 (FAB)

**OPINION AND ORDER**[1]

BESOSA, District Judge.

    Before the Court is the Report and Recommendation ("R&R"), (Docket No. 258), regarding plaintiffs' and defendants' cross motions for summary judgment (Docket Nos. 97, 154, and 202) under Federal Rule of Civil Procedure 56.  Having considered the magistrate judge's recommendations, defendants' objections and response to plaintiffs' objections (Docket Nos. 262 & 267), and plaintiffs' objections (Docket No. 263), the Court **ADOPTS** the R&R as the opinion of the Court.

---

    [1] Elizabeth Gray, a second-year student at the University of New Hampshire School of Law, assisted in the preparation of this Opinion and Order.

**DISCUSSION**

**I.   Background**

　　**A.   Procedural Background**

　　　　Plaintiffs Rosa Angela Gonzalez-Santos ("Gonzalez") and Brenda Lugo-Caraballo ("Lugo") (collectively, "plaintiffs") brought a workplace sexual harassment and retaliation action against defendants Instituto Medico del Norte, Inc., d/b/a Hospital Wilma N. Vazquez ("the Hospital"), Angel Torres-Maldonado ("Torres") and his conjugal partnership, Luis Cruz-Martinez ("Cruz") and his conjugal partnership, Aymette Garcia ("Garcia") and her conjugal partnership, Jose Pabon-Quiñones ("Pabon") and his conjugal partnership, Eduarda Pabon, Enrique Vazquez, Liberty Mutual Insurance Corp. ("Liberty"), (collectively, "Hospital defendants"), and Chartis Insurance Company-Puerto Rico ("Chartis"), formerly known as American International Insurance Company.  (Docket Nos. 258, p. 1 & 108.)  The plaintiffs sued the defendants pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, the Family and Medical Leave Act ("FMLA"), as amended, 29 U.S.C. § 2601 *et seq.*, and assorted Puerto Rico laws. (Docket Nos. 108 & 258, p. 1.)

　　　　On December 21, 2010, defendants filed a motion to dismiss pursuant to Rule 12(b)(6).  (Docket No. 64.)  Subsequent to that filing, plaintiffs filed their fifth amended complaint on March 31, 2011.  (Docket No. 108.)  Pursuant to a referral order

issued by the Court, Magistrate Judge McGiverin filed an R&R which **GRANTED IN PART** and **DENIED IN PART** the defendants' motion to dismiss. (See Docket Nos. 39 & 203.) On September 28, 2011, this Court **ADOPTED IN PART** and **REJECTED IN PART** the magistrate judge's findings. (Docket No. 244, p. 37.) The following claims remained: 1) Lugo's Title VII retaliation claims, 2) Lugo's Law 115 retaliation claims, 3) Gonzalez's Title VII claims, 4) Gonzalez's claims under Puerto Rico Law, and 5) Gonzalez's Law 115 retaliation claims. Id.

While the motion to dismiss was still pending, plaintiffs, the Hospital defendants, and Chartis each filed motions for summary judgment. (Docket Nos. 97, 154, and 202.) Oppositions have been filed for each motion. (Docket Nos. 118, 156, 196, and 214.) On January 20, 2012, pursuant to a referral order issued by the Court, Magistrate Judge McGiverin filed an R&R, recommending that defendant Chartis's motion for summary judgment be **GRANTED,** plaintiffs' motion for summary judgment be **DENIED,** and the Hospital defendants' motion for summary judgment be **GRANTED IN PART.** (Docket No. 258.)

On February 9, 2012, the Hospital defendants filed an objection to the R&R. (Docket No. 262.) The plaintiffs filed their own objection on February 10, 2012. (Docket No. 263.) Subsequently, the Hospital defendants filed a reply to the plaintiffs' objections on February 23, 2012. (Docket No. 267.) On

Civil No. 09-1850 (FAB)                                              4

February 28, 2012, the Hospital defendants filed a motion to join
their objection to the R&R and the reply to plaintiffs' objections.
(Docket No. 268.)   The Court granted the motion for joinder on
February 29, 2012.   (Docket No. 269.)

**B.   Factual Background**

  **1.   Gonzalez's First Complaint**

             Plaintiff Gonzalez began working for the Hospital as
an Office Clerk in the Imaging Center on August 12, 2002.  (Docket
Nos. 97-1, ¶ 3 & 154-1, ¶ 2.)   On August 13, 2002, Gonzalez
received and signed the Hospital's sexual harassment policy.
(Docket Nos. 97-1, ¶ 1 & 154-1, ¶ 3.)   The policy provided a
procedure for filing, investigating, and resolving sexual
harassment complaints.  (Docket Nos. 97-1, ¶ 2 & 154-1, ¶ 4.)   In
October 2006, defendant Torres began working at the Hospital as the
Director of the Imaging Center.  (Docket Nos. 97-1, ¶ 4 & 154-1,
¶ 5.)  After just a month of employment, Gonzalez alleges the first
incidents of harassment occurred.  (Docket Nos. 97-16, pp. 1-2 &
154-1, ¶ 6.)   Gonzalez claims that on separate occasions around
November 16, 2006, Torres called her to his office to perform work
and then he 1) asked her to dance, 2) inquired if she was happily
married, 3) said they could escape together, 4) asked if she was
going to wear shorts to the company baseball game, and 5) said he
wanted to kiss her.  (Docket Nos. 97-16, pp. 1-2 & 154-1, ¶ 6.)   On
November 22, 2006, Gonzalez told Cruz, the Supervisor of the

Radiology Department, about the alleged incident with Torres and informed him that she had written down an account of the event. (Docket Nos. 97-1, ¶ 5 & 154-1, ¶ 9.)  On November 30, 2006, Human Resources ("HR") Manager Garcia met with Cruz after she heard of rumors about a situation involving Torres and a female employee. (Docket Nos. 97-1, ¶ 13 & 154-1, ¶ 10.)  Also on that day, following the meeting with Cruz, Garcia met individually with Torres and Gonzalez.  (Docket Nos. 97-1, ¶¶ 14, 15 & 154-1, ¶¶ 11, 14.)  On November 30, 2006, Gonzalez filed a sexual harassment complaint against Torres on a form provided by the hospital – a "Report of Inappropriate Harassment."  (Docket Nos. 97-1, ¶ 6 & 154-1, ¶ 12.) On December 1, 2006, Gonzalez submitted a detailed written account of her allegations to Garcia.  (Docket No. 154-1, ¶¶ 15, 16.) Gonzalez remained in the same department with Torres after the investigation was concluded.  (Docket Nos. 97-1, ¶ 18 & 154-1, ¶ 26.)

### 2.   Gonzalez's Second Complaint

On April 8, 2008, Gonzalez sent the HR department a memorandum alleging incidents of harassment and retaliation that had occurred since her initial complaint in November 2006. (Docket Nos. 97-1, ¶ 22 & 154-1, ¶ 41.)  In the memorandum, Gonzalez claimed that Torres would shout, use improper gestures, and act in an aggressive manner when assigning her work. (Docket No. 97-29, p. 1.)  She also complained that she received written and verbal

warnings for mistakes which were not hers.  Id.  Gonzalez alleged

that three specific incidents of improper behavior had occurred on

February 12, 2008, February 19, 2008, and March 4, 2008. (Docket

No. 154-1, ¶ 41.)  The HR department conducted an investigation

into all three of the alleged events.  Id. at ¶ 42.  Gonzalez

claimed that on the February dates she was unfairly singled out and

disciplined by Torres.  (Docket No. 97-29, p. 1.)  The

investigation revealed that the February 12, 2008 allegation was in

reference to a memorandum that was addressed to the entire

department and not just to Gonzalez.  (Docket No. 154-1, ¶ 43.)

The HR department could not find evidence of the February 19, 2008

incident.  Id. at ¶ 44.

        The March 4, 2008 incident allegedly occurred while

Gonzalez underwent a pituitary MRI.  Id. at ¶ 45.  Gonzalez claimed

that the MRI technician initially only requested that she remove

all metal objects from her person and allowed her to remain

clothed.  (Docket No. 97-29, p. 2.)  Her letter to the HR

department, however, provides that after the study had commenced,

the technologist informed Gonzalez that her shirt and underwear had

to be removed.  Id.  Furthermore, the technologist informed her

that Torres was conducting the study.  Id.  Gonzalez indicated that

she became "anxious, nervous [sic] anguished" when she discovered

that Torres was in the room.  Id.  Gonzalez did not leave the MRI,

however, after being notified that Torres was present.  (Docket

No. 154-1, ¶ 46.)  Gonzalez is unaware if Torres actually saw her
undressed.  Id.  Torres explained to Gonzalez that he performed the
MRI to "make sure that [Gonzalez] was in adequate conditions for
work."  (Docket 97-29, p. 2.)

### 3.   Gonzalez's Termination

On October 13, 2010, Gonzalez was deposed by the
defendants.  (Docket No. 154-1, ¶ 59.)  At the deposition, Gonzalez
brought documents in support of her complaint which included the
hospital records of various patients.  Id.  Gonzalez admitted that
she had used her employee password to obtain the records which
contained confidential information.  Id. at ¶¶ 59, 60.  Gonzalez
also admitted that she had obtained personal information relating
to Torres and Cruz and had given their information to a private
investigator.  Id. at ¶ 61.  As a result of her actions, Gonzalez
was terminated on November 10, 2010.  Id. at ¶ 62.

### 4.   General Complaints Regarding Torres

Plaintiffs' co-workers have provided testimony
regarding Torres's behavior in the workplace.  Employees have
observed Torres using foul language at work.  (Docket Nos. 97-1,
¶ 33 & 154-1, ¶¶ 72, 73.)  Plaintiff Lugo testified that Torres
referred to another female employee as an "asshole and fucker."
(Docket No. 97-41, ¶ 10.)  Co-worker Joshina Gines-Bruno ("Gines")
claimed that she observed Torres staring inappropriately at women
when they passed by, "look[ing] at them up and down."  (Docket

Civil No. 09-1850 (FAB)                                                    8

No. 97-43, ¶ 16.)  Gines also stated that she observed Gonzalez
leave Torres's office in tears.  Id. at ¶ 9.  Both male and female
employees were required to notify Torres if they had to use the
bathroom.  (Docket Nos. 97-1, ¶ 34 & 154-1, ¶ 98.)

        In 2006, Torres organized a holiday gift exchange
for the department involving gifts of a sexual nature.  (Docket
No. 98-4, ¶ 41.)  Co-worker Gines stated that gifts included g-
strings, cards depicting men and women dressed in their underwear,
a penis-shaped Eskimo, condoms, and whips.  (Docket No. 97-43,
¶ 16.)  In testimony taken at her deposition, Gonzalez explains
that she was out to lunch when one of her co-workers requested that
they stop at a Condom World store so he could pick up gifts for the
exchange.  (Docket No. 154-16, pp. 2-3.)  HR Manager Garcia ordered
Torres to cancel plans to conduct a second gift exchange which
would also have included a sexual theme.  (Docket No. 98-3, pp. 2-
3.)

        **5.  Incidents Involving Lugo**

            On June 26, 2007, Torres gave plaintiff Lugo a
written warning for an incident which allegedly occurred on
June 22, 2007.  (Docket No. 154-1, ¶ 64.)  Lugo refused to sign the
disciplinary memorandum.  Id.  Lugo wrote letters to co-defendant
Pabon, President of the Hospital, to complain of Torres's conduct.
Id. at ¶¶ 65, 66.  Lugo first met with HR Manager Garcia on
April 10, 2008, alleging several incidents involving Torres and

Cruz. Id. at ¶ 67. On April 11, 2008, Lugo sent a letter to the HR department complaining of sexual harassment at the hands of Torres. (Docket Nos. 97-1, ¶ 23 & 154-1, ¶ 47.)

On April 18, 2008, after an investigation by the Hospital and the HR department, Torres was fired because of various complaints and conduct that could be considered improper. (Docket Nos. 97-1, ¶ 25 & 154-1, ¶¶ 48, 49.) Nine months later, on January 9, 2009, Lugo's employment was terminated as a result of the closing of the department where she worked due to a financial decline. (Docket No. 154-1, ¶¶ 80-81.) Id. at ¶ 81. During her tenure with the Hospital, Lugo's salary never decreased, nor was she demoted. Id. at ¶ 78. On January 29, 2009, Lugo filed an EEOC complaint of retaliation. Id. at ¶ 82. The complaint was based on an incident that occurred on March 28, 2008, when Torres accused her of working with a false medical certificate. Id. at ¶ 83. In August, the Hospital informed Lugo that the department would reopen and offered her a position. Id. at ¶ 84. Lugo did not return to work at the Hospital, however. (Docket No. 154-26, p. 21.) She had already found employment elsewhere receiving the same pay and benefits as she had received at the Hospital. (Docket No. 154-1, ¶ 84.)

### 6. Facts Regarding Chartis Insurance Coverage

Chartis served as the Hospital's insurer. (Docket No. 202-1, ¶ 13.) Chartis issued a "Directors, Officers and

Private Company Liability Insurance Policy, including Employment
Practices and Securities Liability" covering the Hospital over a
period spanning August 31, 2006 through August 31, 2007.  Id.  The
policy was a "claims-made" insurance policy, meaning that it only
covered claims made during the coverage period which were reported
by the insured during an appropriate period established by the
policy's terms.  Id.; (Docket No. 202-3.)  On April 1, 2011,
Chartis was served with process.  (Docket No. 202-1, ¶ 3.)  That
was the first time that Chartis was notified that there was a claim
against the Hospital.  Id. at ¶¶ 22, 23.

## II.  Standards

### A.  Standard Under 28 U.S.C. § 636(b)(1)

A district court may refer, *inter alia*, "motions for
summary judgment" to a magistrate judge for a report and
recommendation.  Loc. Rule 72(a)(9); see 28 U.S.C. § 636(b)(1)(B);
Fed.R.Civ.P. 72(b).  Any party adversely affected by the report and
recommendation may file written objections within fourteen days of
being served with the magistrate judge's report.  See 28 U.S.C.
§ 636(b)(1)(C); Loc. Rule 72(d).  A party that files a timely
objection is entitled to a *de novo* determination of "those portions
of the report or specified proposed findings or recommendations to
which specific objection is made."  Sylva v. Culebra Dive Shop, 389
F.Supp.2d 189, 191 (D.P.R. 2005) (citing United States v. Raddatz,
447 U.S. 667, 673 (1980)).  Failure to comply with this rule

precludes further review.  See Davet v. Maccarone, 973 F.2d 22, 30-
31 (1st Cir. 1992) ("Failure to raise objections to the Report and
Recommendation waives the party's right to review in the district
court . . . ."").  In conducting its review, the court is free to
"accept, reject, or modify, in whole or in part, the findings or
recommendations made by the magistrate judge."   28 U.S.C.
§ 636(b)(1)(C); Jasty v. Wright Med. Tech., Inc., 528 F.3d 28, 33-
34 (1st Cir. 2008).  Furthermore, a court may accept those parts of
the report and recommendation to which the parties do not object.
See Hernandez-Mejias v. Gen. Elec., 428 F.Supp.2d 4, 6 (D.P.R.
2005) (citing Lacedra v. Donald W. Wyatt Det. Facility, 334
F.Supp.2d 114, 126 (D.R.I. 2004)).

**B.   Federal Rule of Civil Procedure 56 Standard and Local
       Rule 56**

       Summary judgment is appropriate when a "movant shows that
there is no genuine dispute as to any material fact and the movant
is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(a);
Loc. Rule 56.   In order for a factual controversy to prevent
summary judgment, the contested facts must be "material" and the
dispute must be "genuine."  Anderson v. Liberty Lobby, Inc., 477
U.S. 242, 248 (1986).  "Material" means that a contested fact has
the potential to "affect the outcome of the suit under the
governing law."  Id.  The dispute is "genuine" when a reasonable
jury could return a verdict for the nonmoving party based on the
evidence.  See id.  The party moving for summary judgment has the

initial burden of "demonstrat[ing] the absence of a genuine issue
of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323
(1986).  The party must identify "portions of 'the pleadings,
depositions, answers to interrogatories, and admissions on file,
together with the affidavits, if any'" which support its motion.
Id.

        Once a properly supported motion has been presented, the
burden shifts to the non-moving party "to demonstrate that a trier
of fact reasonably could find in [its] favor." Santiago-Ramos v.
Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000)
(internal citation omitted).  It is well settled that "[t]he mere
existence of a scintilla of evidence" is insufficient to defeat a
properly supported motion for summary judgment. Anderson, 477 U.S.
at 252.  It is therefore necessary that "a party opposing summary
judgment must 'present definite, competent evidence to rebut the
motion.'" Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581
(1st Cir. 1994) (internal citation omitted).

        In making this assessment, the Court "must view the
entire record in the light most hospitable to the party opposing
summary judgment, indulging in all reasonable inferences in that
party's favor." Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir.
1990).   The  Court  does  not,  however,  "make  credibility
determinations  or  weigh  the  evidence." Talavera-Ibarrondo  v.
Municipality of San Sebastian, No. 09-1942, 2011 U.S. Dist. LEXIS

63929, at *9 (D.P.R. June 16, 2011) (citing Anderson, 477 U.S. at 255).   The Court may safely ignore, however, "conclusory allegations, improbable inferences, and unsupported speculation." Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990).

        The First Circuit Court of Appeals has "repeatedly . . . emphasized the importance of local rules similar to Local Rule 56 [of the District of Puerto Rico]."   Hernandez v. Phillip Morris USA, Inc., 486 F.3d 1, 7 (1st Cir. 2007).   Rules such as Local Rule 56 "are designed to function as a means of 'focusing a district court's attention on what is - and what is not - genuinely controverted.'"   Id.  (quoting Calvi v. Knox County, 470 F.3d 422, 427 (1st Cir. 2006)).   Local Rule 56 imposes guidelines for both the movant and the party opposing summary judgment.   Loc. Rule 56. A party moving for summary judgment must submit factual assertions in "a separate, short, and concise statement of material facts, set forth in numbered paragraphs."   Loc. Rule 56(b).   A party opposing a motion for summary judgment must "admit, deny, or qualify the facts supporting the motion for summary judgment by reference to each numbered paragraph of the moving party's statement of facts." Loc. Rule 56(c).   Facts which are properly supported "shall be deemed admitted unless properly controverted."   Loc. Rule 56(e); P.R. Am. Ins. Co. v. Rivera-Vazquez, 603 F.3d 125, 130 (1st Cir. 2010).   Due to the importance of this function to the summary

judgment process, "litigants ignore [those rules] at their peril."
<u>Hernandez</u>, 486 F.3d at 7.

### C.    R&R Findings

Defendant Chartis moved for summary judgment on all
claims. (Docket No. 202.) The magistrate judge determined that
the Hospital defendants had a "claims-made" insurance policy with
the company. (Docket No. 258, p. 12.) The policy only covered
claims made during the coverage period which were reported by the
insured during an appropriate period established by the policy's
terms. <u>Id.</u> at 12-13. The magistrate judge determined that the
Hospital defendants did not notify Chartis of the plaintiffs'
claims during the designated time period. <u>Id.</u> at 13. Thus, the
magistrate judge held that Chartis is not liable for the claims and
he recommended that Chartis' motion for summary judgment be
**GRANTED**. <u>Id.</u>

Co-plaintiff Gonzalez moved for partial summary judgment
for her discrimination claims under Title VII and Puerto Rico law.
(Docket No. 97.) Gonzalez argued that: 1) the Hospital was
estopped from arguing that Torres's conduct was not sexual
harassment, 2) summary judgment was appropriate on her hostile work
environment claims, and 3) summary judgment was appropriate on a
claim that the Hospital breached its Puerto Rico Law 17 duties.
(Docket No. 258, pp. 13-14.) The magistrate judge found that
judicial estoppel was not implicated by the legal proceedings. <u>Id.</u>

at 14.  The magistrate judge also found that there were genuine disputes of material facts relating to Gonzalez's Title VII and Puerto Rico law hostile work environment claims.  <u>Id.</u> at 18. Lastly, the magistrate judge found that there was a genuine dispute of material fact as to whether Gonzalez was subjected to sexual harassment, and therefore, a jury could find that the Hospital did not breach its duty under Law 17.  <u>Id.</u>  Thus, the magistrate judge recommended that Gonzalez's motion for summary judgment be **DENIED**. <u>Id.</u>

The Hospital defendants moved for summary judgment on all of the plaintiffs' claims.  (Docket No. 154, p. 2.)  The Hospital defendants argued that: 1) Gonzalez was unable to establish a *prima facie* claim of hostile work environment, 2) they were not liable based upon the Faragher/Ellerth defense, and 3) the factual record did not support Gonzalez's nor Lugo's retaliation claims.  (Docket No. 154.)  The magistrate judge found that there was a genuine dispute of material fact as to whether Gonzalez established a *prima facie* hostile work environment claim.  (Docket No. 258, p. 19.) The magistrate judge also found that there was a genuine dispute of material fact as to whether both elements of the Faragher/Ellerth defense were satisfied.  <u>Id.</u> at 20.  The magistrate judge found, however, that Gonzalez had not established that she suffered an adverse employment action for her Title VII and Law 115 retaliation claims.  <u>Id.</u> at 23.  The magistrate judge also found that Lugo had

not established a *prima facie* case of retaliation.  Id.  Thus, the magistrate judge recommended that summary judgment on Gonzalez's and Lugo's Title VII retaliation claims and Gonzalez's Law 115 claims be **GRANTED**.   Id.   Conversely, the magistrate judge recommended that summary judgment on Gonzalez's hostile work environment claims be **DENIED**.   Id.

**III. Legal Analysis**

    **A.   Defendants' Objections**

       The Hospital defendants object to the magistrate judge's recommendation denying their motion for summary judgment on 1) Gonzalez's hostile work environment claims and 2) their Faragher/Ellerth defense.  (Docket No. 262, pp. 5, 20.)  The Hospital defendants also object to certain factual determinations made by the magistrate judge in his recommendation to deny plaintiff Gonzalez's hostile environment claim.  Id. at 8-14.  The Court addresses each in turn.

       **1.   Gonzalez's Hostile Work Environment Claims**

       The Hospital defendants specifically object to the magistrate judge's finding that Gonzalez was able to establish a *prima facie* case of hostile work environment.  (Docket No. 262, pp. 2, 5.)  The Hospital defendants also argue that 1) any alleged harassment was not based on sex and 2) the alleged harassment was not sufficiently severe or pervasive so as to alter the conditions of Gonzalez's employment.  (Docket No. 262.)

In order to state a *prima facie* case of hostile work environment under Title VII, a plaintiff must prove the following: "(1) that she (or he) is a member of a protected class; (2) that she (or he) was subjected to unwelcome sexual harassment; (3) that the harassment was based upon sex; (4) that the harassment was sufficiently severe or pervasive so as to alter the conditions of plaintiff's employment and create an abusive work environment; (5) that sexually objectionable conduct was both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and the victim in fact did perceive it to be so; and (6) that some basis for employer liability has been established." Agusty-Reyes v. Dep't. of Educ. of P.R., 601 F.3d 45, 53 n.6 (1st Cir. 2010) (internal citations omitted).

The First Circuit Court of Appeals has explained that the finding of a hostile work environment "does not depend on any particular kind of conduct" and "that [t]here is no precise formula for establishing sufficiently egregious conditions." Perez-Cordero v. Wal-Mart Puerto Rico, 656 F. 3d 19, 29 (1st Cir. 2011). "When harassment is motivated by a failed attempt to establish a romantic relationship, 'the victim's sex is inextricably linked to the harasser's decision to harass.'" Id. at 28 (quoting Forrest v. Brinker Int'l. Payroll Co., 511 F.3d 225, 229 (1st Cir. 2007). A court must look at the "totality of the circumstances, including 'the frequency of the discriminatory

conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" Valentin-Almeyda v. Municipality of Aquadilla, 447 F.3d 85, 94 (1st Cir. 2006) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993)); see also O'Rourke v. City of Providence, 235 F.3d 713, 729 (1st Cir. 2001) ("The accumulated effect of incidents of humiliating, offensive comments directed at women and work-sabotaging pranks, taken together, can constitute a hostile work environment.").

> i.   **There is a Genuine Dispute as to Whether Gonzalez has Established a *Prima Facie* Case of Hostile Work Environment**

The Court examines the first five elements of the test together, because the facts taken as a whole indicate that there was a genuine dispute of material fact as to whether Gonzalez has established a *prima facie* case of hostile work environment. Gonzalez, a member of a protected class as a woman, claims that around November 16, 2006,[2] Torres called her to his office to

----

[2] The Hospital defendants have once again urged the Court not to consider the alleged discriminatory acts that took place in November 2006, claiming they are time-barred. (Docket No. 262, p. 5, fn. 5 & p. 13, fn. 7.) The Court rejected this argument earlier, finding that it may consider those events because "[p]rovided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 117 (2002); (see Docket No. 244.)

perform work and then he 1) asked her to dance, 2) inquired if she
was happily married, 3) said they could escape together, 4) asked
if she was going to wear shorts to the company baseball game, and
5) said he wanted to kiss her.  (Docket Nos. 97-16, pp. 1-2 & 154-
1, ¶ 6.)  Gonzalez's written account of the November 2006 incident
indicates that 1) when Torres requested a dance, she replied, "you
are crazy," and denied his request, 2) on another occasion when
Torres asked her about taking an escapade, she responded that "I am
a married person," and 3) when Torres asked her for a kiss, she ran
away crying.  (Docket No. 97-16, p. 2.)  Thus, a jury could
rationally find that the alleged harassment was based upon sex
because of Torres's romantic advances.  See Forrest, 511 F.3d
at 229 ("the prior [failed] relationship would never have occurred
if the victim were not a member of the sex preferred by the
harasser").  Furthermore, Gonzalez's rejection of Torres's advances
demonstrates his attention was not welcomed.  See Perez-Cordero,
656 F.3d at 28 (evidence that victim avoided supervisor's unwanted
attention and "clear and unequivocal rejection" indicated that
harassment was unwarranted).  At least one of the November 2006
advances allegedly occurred in Torres's office with the door closed
and only he and Gonzalez present.  (Docket No. 97-16, p. 1.)  A co-
worker also stated that she observed Gonzalez leave Torres's office
in tears on several occasions.  (Docket No. 97-43, ¶ 9.)
Additionally, Torres organized a sexually-themed holiday gift

exchange for the department where gifts included g-strings, cards depicting men and women dressed in their underwear, a penis-shaped Eskimo, condoms, and whips.  (Docket Nos. 97-43, ¶ 16 & 98-4, ¶ 41.)  A jury could rationally find that the harassment was both severe and pervasive, as well as offensive.  See White v. New Hampshire Dep't. of Corrections, 221 F.3d 254, 262 (1st Cir. 2000) (finding that evidence which alleged that supervisors "read pornography in the office [and] . . . used foul language and/or made sexual jokes or comments in her presence" was relevant to the plaintiff's hostile work environment claim).

The Hospital defendants object to certain factual determinations made by the magistrate judge in his R&R regarding plaintiff Gonzalez's hostile environment claims.  (Docket No. 262.)  The Hospital defendants object to facts relating to: 1) the gift exchange, 2) the MRI study, 3) allegations of excessive discipline, and 4) Torres's use of sexual language.  (Docket No. 262, at pp. 8-14.)  Specifically, they claim that the determinations are not supported by the factual record.  Id. Additionally, they argue that: 1) Gonzalez did not allege the department gift exchange constituted sexual harassment, and 2) Plaintiff Lugo, and not Gonzalez, made allegations regarding Torres's use of vulgar language.  (Docket No. 262, pp. 8, 10.)

At the summary judgment phase, the Court need not weigh the evidence, because the ultimate determination of the

issues requires credibility determinations that must be resolved by a jury at trial.   See Anderson, 477 U.S. at 255 (explaining "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ."); Simas v. First Citizens' Fed. Credit Union, 170 F.3d 37, 49 (1st Cir. 1999) (noting that "credibility determinations are for the factfinder at trial, not for the court at summary judgment").   While a court is only required to examine the materials cited by the moving party, "it may consider other materials on the record."   Fed.R.Civ.P. 56(c)(3); Loc. Rule 56(e).

Evidence for all four issues is documented on the record. (See, e.g., Docket No. 154- 1, ¶¶ 31, 39, 45, 72, 73.) The Court is free to consider evidence from any part of the record, including testimony from depositions.   See Fed.R.Civ.P. 56(c)(3); Loc. Rule 56(e).   Looking at the evidence "in the light most hospitable to the party opposing summary judgment . . .", a jury could rationally find that the aforementioned evidence supports a finding of a hostile work environment.   See O'Rourke, 235 F.3d at 729 ("As part of its evaluation, a jury may consider a broad range of conduct that can contribute to the creation of a hostile work environment.").

### ii.  Employer Liability is Established

The last element of the hostile work environment claim establishes the basis for employer liability. Faragher v. City of Boca Raton, 524 U.S. 775, 807 (1998). An employer is liable when the hostile work environment is created by the victim's "supervisor with immediate (or successively higher) authority over the employee." Id. It is undisputed that Torres was the Director of the department where Gonzalez worked. (Docket Nos. 97-1, ¶ 4 & 154-1, ¶ 5.) Thus, there is a basis of liability for the Hospital defendants. See Faragher, 524 U.S. at 807.

Based upon these facts, the Court **ADOPTS** the magistrate judge's finding that there is a genuine dispute as to whether Gonzalez has established a *prima facie* case of hostile work environment, and as a result, the Hospital defendants' motion for summary judgment is **DENIED**.

### 2.  Faragher/Ellerth Defense

An employer is subject to vicarious liability when a plaintiff alleges that a supervisor created a hostile work environment. Id. The defendant employer may raise an affirmative defense to the liability. Id. Under the Faragher/Ellerth defense, an employer must prove, by a preponderance of the evidence, the following two elements: "(1) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (2) that the plaintiff employee

unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." Id. The affirmative defense is only available "when no tangible employment action is taken . . . ." Id. The Supreme Court has identified "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits" as examples of tangible employment actions. Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 761 (1998). The record does not indicate that a tangible employment action occurred, so the Hospital defendants are not barred from raising the defense. The Court will now determine if there exists a "genuine dispute as to any material fact" regarding the Hospital defendants' Faragher/Ellerth defense. Fed.R.Civ.P. 56(a).

### i.   The Hospital had a Sexual Harassment Policy

In support of the first prong of the defense, it is uncontested that the Hospital had a sexual harassment policy. (Docket Nos. 97-1, ¶ 1 & 154-1, ¶ 3.) The policy provided a procedure for filing, investigating, and resolving sexual harassment complaints. (Docket Nos. 97-1, ¶ 2 & 154-1, ¶ 4.) Furthermore, both parties agree that Gonzalez was provided with a copy of the sexual harassment policy, and that she read and signed the policy. (Docket Nos. 97-1, ¶ 1 & 154-1, ¶ 3.) Thus, a jury could rationally find that the Hospital defendants have satisfied

the first prong of the affirmative defense as a matter of law.  See
Landrau Romero v. Caribbean Restaurants, Inc., 14 F.Supp.2d 185,
192 (1998) (first prong satisfied where there was no genuine issue
of material fact regarding the fact that defendant had an anti-
harassment policy); see also Reed v. MBNA Mktg. Sys., 333 F.3d 27,
35 (1st Cir 2003) (employer's decision to discipline an offending
supervisor lightly did not show that the employer "lacked a
substantial anti-harassment program").

> **ii.   There is a Genuine Dispute as to Whether
> Gonzalez Unreasonably Failed to Take Advantage
> of the Hospital's Sexual Harassment Policy**

In support of the second prong of the defense,
the Hospital defendants claim that Gonzalez failed to file an
official report following each alleged incident subsequent to the
November 2006 incidents.  (See Docket Nos. 97-1, ¶ 22 & 154-1,
¶ 41.)  It is undisputed that in November 2006, Gonzalez filed an
official complaint to the Hospital's HR department regarding the
first alleged incidents.  (Docket Nos. 97-1, ¶ 6 & 154-1, ¶ 12.)
The record also indicates that despite failing to submit an
official "Report of Inappropriate Harassment," Gonzalez wrote a
memorandum to the HR department on April 8, 2008, complaining of
incidents which occurred in the previous two months.  (Docket
No. 97-29, p. 1.)  Thus, a jury could rationally conclude that
Gonzalez was not unreasonable because she made attempts to document
the alleged conduct and report it to the HR department.   See

Agusty-Reyes, 601 F.3d at 56 (finding that a plaintiff's efforts to report her supervisor's behavior constituted a reasonable attempt to avoid further harm, despite failing to comply with the formal complaint procedure).

Based upon these facts, the Court **ADOPTS** the magistrate judge's finding that there is a genuine dispute as to whether both elements of the Fargher/Ellerth defense are satisfied, and as a result, the Hospital defendants' motion for summary judgment is **DENIED.**

## B.   Plaintiffs' Objections

The plaintiffs object to the magistrate judge's use of the record.  (Docket No. 263.)  The Hospital defendants have filed a reply to the plaintiffs' objections, claiming that the plaintiffs fail to make specific objections to the magistrate judge's findings or supply legal reasoning to their arguments, as required under Federal Rule of Civil Procedure 72(b) and Local Rule 72(d). (Docket No. 267.)

### 1.   General Objection

First, the plaintiffs generally object that the magistrate judge failed to reference certain documents and exhibits relevant to their claims, and thus relied upon an incomplete source of facts.  (Docket No. 263, pp. 3-6.)  A party that files a timely objection is entitled to a *de novo* determination of "those portions of the [magistrate judge's] report or specified proposed findings

or recommendations to which **specific objection** is made." <u>Sylva</u>,
389 F.Supp.2d at 191 (internal citation omitted) (emphasis added);
<u>see</u> Loc. Rule 72(d); <u>see also</u> <u>Miquelachuli v. FDIC</u>, 799 F.Supp.2d
141, 144 (D.P.R. 2011) ("Hence, the standard of review of a report
and recommendation to which an objection has been filed is *de novo*
review of those matters **properly** objected.") (internal citations
omitted) (emphasis added). When a party fails to object to an R&R
properly, "the district court ha[s] a right to assume that [the
party] agreed to the magistrate judge's recommendation." <u>Templeman
v. Chris Craft Corp.</u>, 770 F.2d 245, 247 (1st Cir. 1985).  The
plaintiffs make a general objection to the magistrate judge's use
of the record, failing to specify what portions of the R&R are
affected. (Docket No. 263, pp. 3-6.) Because the plaintiffs fail
to object to the R&R properly, they are not entitled to a review of
the objection. <u>See</u> <u>Templeman</u>, 770 F.2d at 247 (Finding that
district court had right to accept R&R when the plaintiff failed to
raise an objection properly).

### 2.   Specific Objections

Second, the plaintiffs specifically object to the
magistrate judge's application of Local Rule 56. (Docket No. 263,
pp. 10-12.)  The plaintiffs expressly argue that:  1) the
magistrate judge failed to identify and clarify which of the
Hospital defendants' opposing statements (Docket No. 118-1) were
disregarded, 2) the plaintiffs were prejudiced because the

magistrate judge disregarded the facts included within their reply
motion (Docket No. 133), and 3) the magistrate judge failed to
identify if additional facts proposed by the Hospital defendants in
their reply statement of facts (Docket No. 205-2) were disregarded.
(Docket No. 263, pp. 10-12.)

          Parties must present arguments in more than a
"perfunctory manner, unaccompanied by some effort at developed
argumentation, [or they] are deemed waived." United States v.
Zannino, 895 F.2d 1, 17 (1st Cir. 1990). Plaintiffs failed to
develop their arguments, merely stating the three objections
without citing any legal authority. (See Docket No. 263, 10-12.)
As a result, the Court considers the plaintiffs' three specific
objections waived. See Zannino, 895 F.2d at 17 ("It is not enough
merely to mention a possible argument in the most skeletal way,
leaving the court to do counsel's work, create the ossature for the
argument, and put flesh on its bones.").

### III. Conclusion

     The Court has made an independent examination of the entire
record in this case, including the magistrate judge's
recommendations, defendants' objections and response to plaintiffs'
objections (Docket Nos. 262 & 267), and plaintiffs' objections
(Docket No. 263), and **ADOPTS** the magistrate judge's findings and
recommendations as the opinion of this Court. Accordingly,
defendant Chartis's motion for summary judgment is **GRANTED**,

Civil No. 09-1850 (FAB)                                                    28

plaintiffs' motion for partial summary judgment is **DENIED,** and the

Hospital Defendants' motion for summary judgment is **GRANTED IN PART**

**AND DENIED IN PART.**

All claims against Chartis are **DISMISSED with prejudice.**

Plaintiffs Lugo's and Gonzalez's Law 115 claims against defendants

Torres and Cruz are **DISMISSED with prejudice.**  Gonzalez's hostile

environment claims against the Hospital, Liberty and Torres remain.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, March 14, 2012.

                                    s/ Francisco A. Besosa
                                    FRANCISCO A. BESOSA
                                    UNITED STATES DISTRICT JUDGE